# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| THOMAS GLENN WALDREP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **3:12-cv-612-AKK** |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Thomas G. Waldrep ("Waldrep") brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and therefore, **AFFIRMS** the decision denying benefits.

### I.  Procedural History

Waldrep filed his applications for Title II disability insurance benefits

("DIB") and Title XVI Supplemental Security Income ("SSI") on November 13, 2009, alleging a disability onset date of May 31, 2009, due to severe arthritis and a knot in his right elbow. (R. 139-155, 214). After the SSA denied his applications, Waldrep requested a hearing. (R. 65-74, 78-85). At the hearing on February 28, 2011, Waldrep was 51 years old with a tenth grade education. (R. 183, 217). Waldrep's past relevant work includes working at an asphalt company as a heavy equipment operator and construction worker. (R. 197-203, 215). Waldrep has not engaged in substantial gainful activity since his onset date. (R. 214).

The ALJ denied Waldrep's claims, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6, 16-33). Waldrep then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  As such, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Waldrep met the insured status requirements of the Act through December 31, 2012. (R. 21).  Moving to the first step, the ALJ found that Waldrep had not engaged in substantial gainful activity since May 31, 2009, and, therefore, met

Step One. *Id*. Next, the ALJ found that Waldrep satisfied Step Two because he suffered from the severe impairments of "depressive disorder, not otherwise specified; rule out history of alcohol abuse; tachycardia; tobacco abuse; olecranon bursitis; and arthralgia." *Id*. The ALJ then proceeded to the next step and found that Waldrep failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 22). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that:

> [T]he claimant has the following residual functional capacity ["RFC"]: he can perform work at a light exertional level; he can occasionally perform postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs; he is unable to climb ropes, ladders or scaffolds; he can tolerate casual non-intensive interaction with members of the general public and coworkers; he can perform simple tasks with one to two steps; and he can tolerate infrequent changes in work place that are introduced gradually.

(R. 23). In light of Waldrep's RFC, the ALJ determined that Waldrep is "unable to perform any past relevant work." (R. 27). Regarding Waldrep's pain complaints, the ALJ found that the "medical evidence does not support [Waldrep's] allegations of severe and chronic pain and limitation of function to the degree that would preclude the performance of all substantial gainful activity."

*Id*. After considering Waldrep's age, education, work experience, and RFC, the ALJ determined in Step Five that "there are jobs that exist in significant numbers in the national economy that [Waldrep] can perform." (R. 28). Consequently, the ALJ found that Waldrep "has not been under a disability, as defined in the Social Security Act, from May 31, 2009, through the date of this decision." (R. 29).

### V.  Analysis

Waldrep disagrees with the ALJ's decision and requests that this court enter "judgment for such relief as may be proper." Doc. 1 at 2. As shown below, substantial evidence supports the ALJ's decision.

####  A.    Severe vs. Non-Severe Impairments

The court begins its review with Waldrep's impairments. Again, Waldrep alleges disability because of "[s]evere arthritis [and a] knot [in his] right elbow." (R. 214). Based on the medical evidence, the ALJ determined that Waldrep had the severe impairments of "olecranon bursitis" (fluid on the elbow), "arthralgia," also known as arthritis or severe pain in the joints, and a "depressive disorder, not otherwise specified; rule out history of alcohol abuse; tachycardia; tobacco abuse." (R. 21). The court finds no error in the ALJ's assessment of Waldrep's severe impairments.

B.      **Residual Functional Capacity**

In light of Waldrep's impairments, the ALJ determined that Waldrep had the RFC to perform light work, to occasionally make postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs; not to climbing ropes, ladders or scaffolds; to tolerate casual non-intensive interaction with members of the general public and coworkers; to perform simple tasks with one to two steps; and to tolerate infrequent changes in work place that are introduced gradually. (R. 23). The substantial evidence also supports this finding. For example, as the ALJ noted, on January 3, 2011, Waldrep went to the Eliza Coffee Memorial Hospital where Dr. Charles A. Hagen, M.D. treated Waldrep for right elbow pain from a fall Waldrep sustained two days prior to his hospital visit. (R. 295). Dr. Hagen noted that Waldrep had moderate pain in his right elbow on movement, limited range of motion, a history of arthritis, and diagnosed him with arthralgia. (R. 296-97). Dr. Hagen also consulted a radiologist who found "no fracture, dislocation, or joint effusion" in Waldrep's right elbow. (R. 299). On discharge, Dr. Hagen instructed Waldrep simply to take Ibuprofen 600 mg for his pain and ordered no follow-up visits. (R. 300).

Dr. Hagen is the only treating physician in the medical record. As the ALJ noted, "[w]ith the exception of one visit to the emergency [to see Dr. Hagen] in

2011 for pain after a fall, the record reflects no actual treatment for the claimant's alleged impairments." (R. 25). While the ALJ did not expressly state what weight he gave Dr. Hagen's treatment notes, it is clear the ALJ relied upon on this evidence to determine that Waldrep did not have disabling pain since the ALJ noted that he paid "particular attention...to the clinical and laboratory findings [in] the record." (R. 27). The court finds no error in the ALJ's decision to rely on Dr. Hagen's findings to find that Waldrep is not disabled. *See Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) ("It is well-established that 'the testimony of a treating physician must be given substantial or considerable weight *unless* "good cause" is shown to the contrary.'" ) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); s*ee also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In addition to Dr. Hagen, the ALJ also consulted additional sources. For example, the ALJ noted that on January 20, 2010, Dr. M. Clarke Woodfin, Jr., M.D., a consultative physician, saw Waldrep for pain in the arms, shoulders, knees, and feet. (R. 285). According to Dr. Woodfin, Waldrep had a bump on his right elbow and full range of motion in all joints without apparent discomfort. (R. 286). Dr. Woodfin diagnosed Waldrep with tachycardia, tobacco abuse, and olecranon bursitis, but noted that "except for the tachycardia, there is no objective

evidence of physical limitation on the day of this examination. No specific physical limitations are stated regarding lifting, carrying, sitting, being on his feet, or walking." (R. 285-87). Although the ALJ gave Dr. Woodfin's opinion little weight because Dr. Woodfin "only examined [Waldrep] on one occasion [and] because it does not adequately consider [Waldrep's] subjective complaints or the combined effect of his impairments," (R. 25), the court finds that Dr. Woodfin's opinion supports the ALJ's finding that Waldrep is not disabled.[2]

Regarding his pain, Waldrep testified that "sitting on equipment...I'd get off...[and] I couldn't hardly walk. My arms hurt me and I'd have to pull over going home because my legs would hurt me so bad, I just, I couldn't take it anymore." (R. 38). Waldrep added that he had a "burning in [his] elbow[s] all the time." (R. 49). For these ailments, Waldrep takes four to five Ibuprofen two or three times a day to ease his pain which averages an eight on a scale of zero to ten. (R. 44-45).

As a threshold matter, the court notes that subjective complaints of pain

---

[2]The ALJ also relied on two consultative psychological reports the Commissioner obtained: Dr. James E. Crowder, Ph.D, a consultative psychologist, diagnosed Waldrep with depressive disorder, arthritis, and shortness of breath. (R. 267-68). Also, Dr. Dale Leonard, Ph.D. performed a Psychiatric Review Technique and determined that Waldrep had depressive disorder, but noted no treatment history for Waldrep's mental limitations or the indication of severe mental limitations. (R. 270-283). The court finds that the reports of Drs. Browder and Leonard do not support or refute Waldrep's claim of disability.

alone are insufficient to prove disability. *See* 20 C.F.R. § 416.929(a); *see also Holt*, 921 F.2d at 1223. Rather, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id*. It is undisputed that Waldrep has a underlying medical condition and, in fact, the ALJ found as such in Step Two. (R. 21). The disagreement centers on whether Waldrep's conditions can be reasonably expected to cause the alleged pain Waldrep claims. According to the ALJ, "[Waldrep's] medically determinable impairments cannot reasonably be expected to cause the pain and dysfunction that [Waldrep] alleges. [Waldrep's] statements concerning the intensity, persistence and limiting effects of these symptoms are credible only to the extent they are consistent with the . . . residual functional capacity assessment. The medical evidence does not support his allegations of severe and chronic pain and limitation of function to the degree that it would preclude all performance of all substantial gainful activity." (R. 26-27); *see Holt*, 921 F.2d at 1223. Unfortunately for Waldrep, a review of the ALJ's opinion and the medical evidence shows that the ALJ properly considered the pain documented in connection with Waldrep's arthritis and the knot in his elbow and

properly concluded that Waldrep's complaints were not credible. As such, the ALJ's findings are supported by substantial evidence.

In sum, there is simply insufficient medical evidence to support Waldrep's contention that he is disabled. Therefore, the court finds no error with the ALJ's findings. In reaching this conclusion, the court notes that Waldrep failed to present sufficient evidence to the ALJ to support his claim and presented nothing to this court to show how the ALJ purportedly erred. Ultimately, Waldrep has the burden of proving his claims, *see* 20 C.F.R. § 416.912(c), and failed to make the necessary showing. Therefore, the substantial evidence supports the ALJ's RFC determination.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Waldrep is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 27th day of December, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE